UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHEN HORN,

        Plaintiff,        Civil Action No. 13-14626
                                     Honorable Judith E. Levy
v.                              Magistrate Judge Elizabeth A. Stafford

TUSCOLA COUNTY and
OFFICER RAMIREZ,

        Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [R. 56]**

**I.    INTRODUCTION**

In his amended complaint, filed pursuant to 42 U.S.C. § 1983, Plaintiff Stephen Horn alleges that he was injured due to the deliberate indifference and gross negligence of Officer Jonathan Ramirez, and Tuscola County is subject to municipal liability. Defendants move for summary judgment. [R. 56].[1] Since Horn has not established that Officer Ramirez acted with deliberate indifference or gross negligence, the Court recommends that the defendants' motion for summary judgment be **GRANTED**.

---

[1] Other defendants have already been dismissed. [R. 48; R. 39].

## II. BACKGROUND

Horn's allegations arise from Officer Ramirez's mistake in dispensing Horn sleep-aid medications – Ambien and Seroquel – that were intended for another prisoner. [R. 56-2, PgID 328; R. 56-4, PgID 349-50]. This incident occurred on February 18, 2011 at about 10:05 p.m. [R. 56-8, PgID 397]. According to Officer Ramirez, inmates were lined up to receive medications that were in envelopes bearing the appropriate inmate's name. [R. 56-4, PgID 348-49]. Officer Ramirez testified that his error occurred because Horn was supposed to be near the end of the line, but he skipped in line to ask the officer a question. [R. 56-4, PgID 349]. Although Officer Ramirez denied recalling that Horn raised any objections to the medication, Horn testified that he told Officer Ramirez that the medications were not his, but Officer Ramirez responded, "I give you what the doctor said to give you" and ordered Horn to "take them." [*Id.;* R. 56-2, PgID 328].

Officer Ramirez knew that Ambien was a sleep aid, and that some people abused Seroquel due to its intoxicating effects. [R. 56-4, PgID 349-50]. So after realizing his mistake, Officer Ramirez called the on-call physician, Steven A. Cullinan, M.D., about ten minutes after Horn had received the medications. [R. 56-4, PgID 350, 355; R. 56-11]. Dr. Cullinan told Officer Ramirez that no observation was needed and that Horn "should

2

be tickled to have gotten them. He will be fine." [R. 56-11; R. 56-4, PgID 353]. Officer Ramirez recalls also telling Horn that he received the wrong medications, but not the type of medications or the potential effects. [R. 56-4, PgID 350-51]. Horn states Officer Ramirez admitted to giving him the wrong medications and apologized, and that he learned from the inmate who was supposed to receive the Ambien and Seroquel what he had been given. [R. 56-2, PgID 328-29].

That same night, Officer Ramirez documented the mix-up in an incident book, and other officers said that they were briefed the following morning. [R. 56-8, PgID 397; R. 56-4, PgID 355; R. 56-6, PgID 391; R. 56-9]. Jail staff conducted routine inspections, but there is no evidence that anyone gave Horn any special attention. [R. 56-4, PgID 355; R. 56-5, PgID 371]. Officer Ramirez's shift ended at 7:00 a.m. the following morning without further incident involving Horn. [R. 56-4, PgID 355].

Horn testified that, after taking the medication, he became dizzy, lightheaded and fatigued and fell asleep. [*Id.*, PgID 330]. At a point in time that he does not recall, he awoke, staggered to the toilet area and fell; he believes that he lost consciousness. [*Id.,* PgID 330-32]. He remembers an officer came to attend to him and gave him an icepack. [*Id.,* PgID 331-34].

Officer Glocksine's report and testimony indicates that Horn's fall

occurred at 3:20 p.m. on February 19, 2011, and that this time was confirmed by a video recording. [R. 56-9, PgID 401-02; R. 56-10, PgID 408]. Horn told Officer Glocksine that he had been feeling weird all day and that he had received the wrong medication the previous night. [*Id.*] Horn filed a grievance alleging that Officer Ramirez's negligence caused him to fall and hit his head, but it was denied. [R. 56-14.]. The reviewing sergeant reasoned that Officer Ramirez had called Dr. Cullinan within ten minutes, that the doctor said that Horn would suffer no harm and that the fall occurred 17 hours later. [*Id.*]. This lawsuit followed.

Defendants move for summary judgment, arguing that Horn failed to exhaust his administrative remedies; that Officer Ramirez was not deliberately indifferent or grossly negligent, and is entitled to qualified immunity; and that municipal liability is not available under the facts of this case. [R. 56]. Defendants' brief wrongly places the burden regarding the exhaustion of administrative remedies on Horn, but their motion for summary judgment should nonetheless be granted.

### III. ANALYSIS

#### A.

Federal Rule of Civil Procedure 56 provides that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine

4

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986); *Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).

If the movant satisfies its burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001). In deciding a summary judgment motion, the Court must view the factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88(1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

**B.**

Under the Prison Litigation Reform Act ("PLRA"), a prisoner is required to exhaust administrative remedies available before filing a suit. 42 U.S.C. § 1997e(a); *Jones v. Bock,* 549 U.S. 199, 217 (2007). Defendants assert that Horn's claims should be dismissed because he has failed to prove that he exhausted his administrative remedies before bringing this suit. However, defendants have it backwards; it is their burden to prove that Horn has not exhausted administrative remedies. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012). They make no effort to meet this burden, and their argument that Horn failed to exhaust his administrative remedies should be rejected.

**C.**

Before turning to the remaining substantive arguments, the Court will address Horn's complaint that defendants failed to preserve the videotape of his fall, which he argues entitles him to a spoliation instruction with regard to proximate cause. Defendants contend that the video was not intentionally deleted but was automatically "pushed out" by newer recordings, and that they had no reason to anticipate litigation relating to this matter and thus were under no duty to preserve the evidence. [R. 56-5, PgID 368; R. 59, PgID 549].

Federal Rule of Civil Procedure 37(e)(2), which applies to electronically stored information, only permits a spoliation instruction or other penalties against a party who acted with the intent to deprive the opposing party of useful information; negligence or gross negligence are insufficient. *United States v. Woodley*, No. 15-CR-20007, 2016 WL 2731186, at *8 (E.D. Mich. May 11, 2016) (citing Rule 37(e)(2), Advisory Committee Notes (2015)). In the absence of intent, a court is limited to other corrective measures upon a showing that a party has been prejudiced by the loss of information. Rule 37(e)(1). Rule 37(e) "forecloses reliance on inherent authority or state law to determine when certain measures should be used." *Id.*, Advisory Committee Notes (2015).

In support of his request for a spoliation instruction, Horn argues that the video would establish disputed factual issues, including the timing of his fall, the severity of the injuries and whether he was dizzy or disoriented from the medication at the time of his fall. But there is no evidence here that defendants acted with an intent to deprive, or that the destruction of the videotape has prejudiced Horn.

Officer Glocksine documented Horn's fall soon after it happened, including the redness on the forehead and the fact that Horn attributed his fall to "feeling weird" after having taken the wrong medication. [R. 56-10].

This documentation deems questionable both Horn's argument that defendants intended to deny him relevant evidence and his claim of prejudice. Further, Horn received medical attention, including a CT scan of his head. [*See* list of medical records at R. 56, PgID 270]. The videotape is unlikely to present better evidence of the severity of his head injury. And contrary to Horn's argument, there is no factual dispute as to the time of his fall; defendant put forth evidence that the fall occurred at 3:20 p.m., [*id.*], and Horn has presented no evidence to the contrary. Without evidence that defendants intentionally deprived Horn of the videotape or that its destruction has prejudiced him, no Rule 37(e) sanctions or corrective actions should be imposed.

What is more, because Horn has failed to demonstrate that he suffered a violation of his constitutional rights or from gross negligence, the Court need not reach the issue of proximate cause.

## D.

To support his deliberate indifference claim, Horn asserts that Officer Ramirez knew that the Ambien and Seroquel had an intoxicating effect such as drowsiness and other related symptoms. Horn alleges that Officer Ramirez was aware that Seroquel was abused as a recreational drug and therefore put him in peril, and that Dr. Cullinan put him on notice that Horn

8

would be "tickled" by the drugs. Horn contends that, despite this knowledge, Officer Ramirez failed to properly attend to his severe medical needs, and therefore exhibited deliberate indifference in violation of his Eighth Amendment rights.

The Eighth Amendment's Cruel and Unusual Punishment Clause prohibits prison officials from inflicting "unnecessary and wanton infliction of pain" upon inmates. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (internal citations omitted). "'Deliberate indifference' by prison officials to an inmate's serious medical needs constitutes 'unnecessary and wanton infliction of pain' in violation of the Eight[h] Amendment's prohibition against cruel and unusual punishment." *Miller v. Calhoun Cty.*, 408 F.3d 803, 812 (6th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

A deliberate indifference claim has an objective and a subjective component. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). The objective component requires a plaintiff to allege that the medical need at issue is "'sufficiently serious.'" *Id.* at 702-03 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then

disregarded that risk." *Comstock*, 273 F.3d at 703. However, a plaintiff does not have to show that the prison official acted "for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. Rather, a plaintiff needs only to show that the official "recklessly disregard[ed]" a substantial risk of serious harm. *Id.* at 836.

A medical need is "sufficiently serious" enough to establish liability when "it has been diagnosed by a physician that has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment." *Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013). Horn cannot establish that he suffered from a sufficiently serious medical need under either of these alternatives.

First, an inmate's generalized state of intoxication, alone, is insufficient to establish a serious medical need. *Border*, 414 F. App'x. 831, 837 (6th Cir. 2011) (collecting cases). In *Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009), the court held that an inmate who had smoked crack cocaine and exhibited bizarre behavior did not suffer from a medical need that was obvious to a layperson. Here, there is no evidence that Horn was even acting out of the ordinary; his intoxication was even less likely to have obviously required medical attention. Nor did any medical personnel indicate that Horn mandated treatment. To the contrary, Dr. Cullinan told

Officer Ramirez that Horn would be fine and that no observation was necessary. [R. 56-11].

Horn is also unable to satisfy the subjective requirement; there is no evidence that Officer Ramirez recklessly disregarded a substantial risk of serious harm, or that he even perceived such a substantial risk. This conclusion is supported by the authority above establishing that intoxication is not generally considered to constitute a sufficiently serious medical need and, besides that, Officer Ramirez was entitled to rely on Dr. Cullinan's advice that Horn did not need observation and should be fine. *Spears,* 589 F.3d at 255 (officer was entitled to rely on assessments by medical personnel).

Horn cites *Thomas v. Wall*, No. 16-CV-166-BBC, 2016 WL 3006834 (W.D. Wis. May 23, 2016), as being similar to this case. In *Thomas*, the defendant was alleged to having intentionally failed to take basic steps to prevent a mistake, which the district court said could "qualify as a conscious refusal to act reasonably." *Id.* at *1-*2. But the *Thomas* court only found that the plaintiff's complaint stated a claim, and it emphasized that the plaintiff would have to adduce evidence that the defendant knew that the plaintiff faced a substantial risk of harm. *Id.* at *2. Since there is no evidence that Officer Ramirez knew that Horn faced a substantial risk of

11

harm and, in fact, Dr. Cullinan told Officer Ramirez that Horn would be fine, the *Thomas* opinion does not help Horn.

Thus, summary judgment of Horn's deliberate indifference claim against Officer Ramirez should be granted. Officer Ramirez is furthermore entitled to qualified immunity, as that doctrine shields officials from liability for civil damages when conduct does not violate a clearly established statutory or constitutional right. *Scicluna v. Wells*, 345 F.3d 441, 445 (6th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

### E.

Horn alleges that Tuscola County's customs and policies were the moving force behind his Eighth Amendment constitutional rights violation. He argues that the County should have taken steps to review and evaluate its contract with the corporation, with which Dr. Cullinan worked, that provided medical services to the jail. This argument is without merit.

Municipal liability arises only where "the challenged conduct occurs pursuant to a municipality's 'official policy' such that the municipality's promulgation or adoption of the policy can be said to have 'caused' one of its employees to violate the Plaintiff's constitutional rights." *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)). Here, for the reasons stated above,

Horn has not established that Officer Ramirez violated his constitutional rights, much less that Tuscola County's official policy caused such a violation. And Horn's argument that he was injured due to Tuscola County's medical services contractual decision is insufficient because he does not show that that decision "was taken with 'deliberate indifference' as to its known or obvious consequences." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 407 (1997). Summary judgment of Horn's municipal liability claim should be granted.

## F.

Lastly, Horn asserts that Officer Ramirez was grossly negligent. Gross negligence is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. Laws § 691.1407(8)(a); *Jones v. Muskegon County*, 625 F.3d 935, 947 (6th Cir. 2010). It suggests an "almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks." *Tarlea v. Crabtree*, 263 Mich. App. 80, 90 (2004).

The evidence in this case does not demonstrate that Officer Ramirez acted with willful disregard to Horn's safety. Horn argues that Officer Ramirez should have checked the medicine envelope to ensure that he was dispensing the correct medication to him, but that mistake does not

amount to willful disregard. Horn also argues that Officer Ramirez was grossly negligent by failing to monitor him, but as noted, he contacted Dr. Cullinan as soon as he realized his mistake, and acted on Dr. Cullinan's assurances.

## IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS GRANTING** Tuscola County's and Officer Ramirez's motion for summary judgment **[R. 56]** and **DISMISSING** all of Horn's remaining claims.

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD<br>
United States Magistrate Judge

Dated: November 8, 2016

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but

fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 8, 2016.

                                        s/Marlena Williams
                                        MARLENA WILLIAMS
                                        Case Manager